ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| ZAENID M. MALDONADO<br><br>Recurrido<br><br>v.<br><br>COOPERATIVA DE VIVIENDA DE TITULARES JARDINES DE VALENCIA<br><br>Recurrente | KLRA202500333 | *Revisión Administrativa* procedente de la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico<br><br>Querella núm.: Q-2025-TD-0014<br><br>Sobre: Incumplimiento con la Ley 239; Solicitud de Asamblea Extraordinaria |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo

**Ortiz Flores, Jueza Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 5 de agosto de 2025.

Comparece la Cooperativa de Viviendas Jardines de Valencia mediante el presente recurso de *Revisión Administrativa* y nos solicita que revoquemos la *Resolución* emitida por la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico (COSSEC) el 8 de abril de 2025, notificada el 10 de abril del mismo año. En el referido dictamen final, la COSSEC ordenó a la Junta de Directores a convocar la Asamblea Extraordinaria donde deberán discutir, entre otras cosas, la destitución de la Junta de Directores.

Por los fundamentos que discutiremos a continuación, confirmamos el dictamen emitido por la COSSEC.

**I**

Los hechos ante nuestra consideración tienen su génesis con la presentación de una *Querella* por parte de la señora Zaenid Mary Maldonado Maldonado (en adelante, Sra. Maldonado Maldonado o parte querellada-recurrida) contra la Cooperativa de

Número Identificador
SEN2025_____

Viviendas Jardines de Valencia (en adelante, Cooperativa de Viviendas o parte querellada-recurrente) el 3 de marzo de 2025.[1] En el aludido escrito, alegó que el pasado 11 de febrero de 2025 el Comité de Supervisión le comunicó a la Junta de Directores de la Cooperativa de Viviendas una carta solicitando una asamblea extraordinaria con los temas que deseaban discutir, entre estos, se encontraba la posible destitución de la Junta de Directores. Adujo que la Junta de Directores envió una convocatoria para celebrar la mencionada asamblea extraordinaria sin incluir la destitución de estos como uno de los puntos a discutir.

Luego de la evaluación por parte de una Oficial Examinadora, la COSSEC emitió una *Resolución* el 8 de abril de 2025, notificado el 10 de abril del mismo año.[2] En el aludido dictamen, la COSSEC aprobó el informe y recomendación de la Oficial Examinadora por lo que ordenó a la Junta de Directores de la Cooperativa a convocar por más de diez por ciento (10%) una asamblea extraordinaria en la cual deberían discutir los siguientes asuntos:

    a. Informe de COSSEC y Plan de Trabajo

    b. Informe de Status de Propuesta Federal

    c. Plan de Financiamiento para Mejorar Finanzas

    d. Destitución de la Junta de Directores[.]

Por otro lado, el organismo administrativo emitió las siguientes determinaciones de hechos:

    1. La Cooperativa de Vivienda de Titulares Jardines de Valencia ("Cooperativa") se rige por las disposiciones de la Ley Núm. 239.

    2. El 3 de marzo de 2025 se presentó ante la Corporación la querella de epígrafe, notificada el 6 de marzo de 2025.

    3. En la querella se alegó que el 11 de febrero de 2025 se le entregó a la Junta de Directores de la Cooperativa

---

[1] Apéndice del Recurso de *Revisión Administrativo,* en el Anejo 5.
[2] *Id.,* en el Anejo 3.

una carta de parte del Comité de Supervisión, solicitando una asamblea extraordinaria. En la carta estaban los temas a discutir en la asamblea uno de estos siendo la posible destitución de la actual Junta de Directores. La Junta no incluyó dicho tema en la convocatoria de la asamblea.

4. El 31 de enero de 2025 treinta y ocho (38) socios de la Cooperativa firmaron una *Solicitud de Asamblea Extraordinaria de Emergencia para Discutir Situación en Administración, Junta de Directores y Señalamientos de COSSEC*. En dicha solicitud los socios le notificaron los cargos a la Junta de Directores para su posible destitución. Los cargos señalados son:

a. La eliminación del contrato de poda de grama y árboles.

b. La eliminación de los turnos de seguridad por parte de los guardias.

c. El despido injustificado de la Administradora y del empleado de mantenimiento, ambos se encontraban en CT (con tratamiento del Fondo del Seguro de Estado) que seguramente nos va a costar una demanda por maltrato laboral y otras causas.

d. La disminución de los servicios de administración.

e. La falta de supervisión de las medidas disciplinarias de algunos socios, con el manejo de los animales, haciendo sus necesidades por todas partes, sin acción.

f. La falta de acción con los socios morosos, acumulándose más las deudas sin tomar acciones.

g. La falta de acción en suplir documentación para el trámite de venta de apartamentos.

h. Contratación y utilización de empleados para reparaciones de apartamentos que están en sección de cuido por parte de algunos socios que ocupan familiares de miembros de la Junta de Directores.

i. Falta de pago a tiempo a los suplidores, ocasionado la disminución de los servicios y el atraso de ofrecer los mismo[s], como el de la basura, teléfonos, sistema de emergencias y otros, poniendo en riesgo la seguridad y salud de los residentes.

j. Reducción de las Reservas para pagar deudas operacionales.

k. El no cumplir como lo que establece la Ley 239, cuando establece que cuando se aprueba

una Moción para la Asamblea, se debe cumplir con la misma. Se le exigió a la Junta de Directores, que tenía que hacer una Asamblea Extraordinaria para presentar las acciones para mejorar el presupuesto y aun no lo han realizado y llevamos 7 meses de su elección.

l. No se ha presentado cuales fueron los hallazgos de COSSEC, luego de su intervención y mucho menos el Plan de Trabajo para resolver estos.

m.   La falta de transparencia en decisiones tomadas, a la Asamblea.

n. Desconocimiento total del estatus de la Propuesta, donde se nos asignó cerca de $2,222,000.00 poniendo en riesgo ese dinero asignado para mejoras y que de perderlas tendríamos que realizar estos trabajos con el dinero nuestro. Esto sería un desastre mayor, ya que esto aumentaría nuestro déficit a parte de la depreciación del edificio que disminuye el valor de la propiedad.

o. Otras que están ocurriendo y no tenemos certeza, ya que como es costumbre de la Junta de Directores, de ocultar y no tener transparencia de los asuntos por los que pasamos.

5.   Solicitaron, además, la celebración de una Asamblea Extraordinaria con los siguientes propósitos:

a. Explicación de los Asuntos pendientes y siguientes:
- Informe de COSSEC y plan de trabajo
- Informe de Status de Propuesta Federal
- Plan de Financiamiento para mejorar finanzas

b. Destitución de la Junta de Directores

6.   La Cooperativa tiene 199 socios activos, 10% requerido para solicitar una Asamblea por los socios serían 19. En este caso 38 socios solicitaron la Asamblea cumpliendo con dicho requisito.

7. El 11 de febrero de 2025 el Comité de Supervisión de la Cooperativa le remitió una carta a la Junta de Directores notificándole sobre la Petición de los socios para la celebración de una Asamblea Extraordinaria, les notificó de los cargos señalados y les solicitaron la celebración de la Asamblea para discutir los temas antes mencionados.

8. La Junta de Directores notificó a los socios Convocatoria para celebrar la Asamblea Extraordinaria el 16 de marzo de 2025 a la 1:00 pm en la Glorieta de

la Cooperativa. Informaron que en la Asamblea Extraordinaria Informativa se discutirá los siguiente:

a. La Propuesta "Programa de Mitigación para Viviendas de Interés Social CDBG-MIT" del Departamento de la Vivienda Gobierno de Puerto Rico.

b. El Informe Final de la Auditor[í]a de COSSEC, al 31 de agosto de 2024.

c. El estado de situación financiera actual de la Cooperativa.

9. La Junta no añadió, en la Convocatoria, el tema de su destitución solicitada por los socios.

10. La Junta tenía el deber de convocar la Asamblea Extraordinaria solicitada por los socios y en la Convocatoria añadir todos los temas solicitados.

11. La Convocatoria no cumple con los requisitos de incluir todos los temas solicitados por los socios, por lo que es inoficiosa.

12. La Junta de Directores tiene el deber de convocar la Asamblea Extraordinaria solicitada por los socios e incluir en la Convocatoria todos los temas solicitados, entre ellos la destitución de la Junta.

Finalmente, la COSSEC razonó que, la convocatoria realizada por la Junta de Directores de la Cooperativa de Viviendas para realizar una asamblea extraordinaria no incluyó el tema a discutir sobre la destitución de dicho cuerpo, por lo que la referida convocatoria era inoficiosa. Del mismo modo, añadió que debido a que en el presente caso más del diez por ciento (10%) de los socios solicitaron la celebración de una asamblea, la Junta de Directores de la Cooperativa de Viviendas se veía obligada a celebrarla incluyendo todos los temas solicitados, entre ellos, la destitución de la Junta de Directores.

En discrepancia, el 30 de abril de 2025 la Cooperativa de Viviendas presentó una *Solicitud de Reconsideración*.[3] En el aludido escrito, alegó que la solicitud de los socios no indicaba los temas para los cuáles se debía convocar una asamblea extraordinaria, si no que se limitó a expresar una preocupación en

---

[3] Apéndice del Recurso de *Revisión Administrativo*, en el Anejo 2.

conocer el estado financiero y administrativo de la cooperativa. Del mismo modo, arguyó que no procedía incluir la destitución de la Junta de Directores pues ningún cargo fue sometido ni radicado en su contra y este asunto nunca fue incluido en los asuntos que pretendían discutir.

Finalmente, el 7 de mayo de 2025 COSSEC emitió una *Determinación* en la cual no acogió la reconsideración presentada.[4]

Inconforme, el 5 de junio de 2025 la parte recurrente compareció ante nos mediante el presente recurso de *Revisión Administrativa* en el cual nos señaló la comisión del siguiente error:

> **ERR[Ó] COSSEC AL ORDENAR LA INCLUSI[Ó]N EN LA AGENDA DE LA ASAMBLEA EXTRAORDINARIA UN TEMA SOBRE DESTITUCI[Ó]N DE LA JUNTA DE DIRECTORES EN PLENO POR CONSTITUIR UNA PETICI[Ó]N CONTRARIA A DERECHO AL NO HABER SIDO NOTIFICADOS LOS CARGOS A CADA DIRECTIVO POR EL 5% DE LOS SOCIOS.**

Por otro lado, el 3 de julio de 2025 la parte recurrida presentó su escrito en oposición.

Contando con la comparecencia de ambas partes, procedemos a resolver.

**II**

**A.**

La *Ley de Procedimiento Administrativo Uniforme*, Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA 9601, *et seq.* (LPAU) establece los estándares de revisión judicial de órdenes, resoluciones y providencias dictadas por las agencias administrativas. En lo pertinente al caso que nos ocupa, la Sección 4.2 de la LPAU, 3 LPRA sec. 9672, dispone lo siguiente:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el

---

[4] Apéndice del Recurso de *Revisión Administrativo,* en el Anejo 1.

Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sec. 2165 de este título, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. La parte notificará la presentación de la solicitud de revisión a la agencia y a todas las partes dentro del término para solicitar dicha revisión. La notificación podrá hacerse por correo. [...]

Las facultades adjudicativas de una agencia administrativa están regidas por la *Ley de Procedimiento Administrativo Uniforme, supra,* y por la jurisprudencia interpretativa. En especial, la Sección 3.1 de la LPAU, 3 LPRA sec. 9641, requiere que los organismos administrativos fundamenten sus resoluciones con determinaciones de hecho y conclusiones de derecho. En términos sustantivos y procesales, se ha resuelto que los procedimientos y las decisiones de las agencias administrativas están cobijados por una presunción de regularidad y corrección. *Graciani Rodríguez v. Garage Isla Verde, LLC.,* 202 DPR 117, 128-129 (2019). Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo Vda. De Liceaga v. Yiyi Motors, Motor Ambar, Inc.,* 161 DPR 69, 77-78 (2004).

Las decisiones administrativas deben ser respetadas a menos que la parte recurrente establezca que hay evidencia en el expediente administrativo suficiente para demostrar que la agencia no actuó razonablemente. *Borschow Hosp. V. Jta. De Planificación,* 177 DPR 545, 566 (2009). El alcance de la revisión judicial de las decisiones administrativas conforme la Sección 4.5 de LPAU, 3 LPRA sec. 9675, se limitan a determinar si el remedio brindado por la agencia es el apropiado; si las determinaciones de hechos realizadas se basan en evidencia sustancial que obra en el expediente administrativo y si las conclusiones de derecho son

correctas mediante una revisión completa. Véase, además, *P.R.T.C. v. J. Reg. Tel. de P.R.*, 151 DPR 269, 281 (2000).

Respecto a las determinaciones de hechos, la Sección 4.5 de la LPAU, *supra*, dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo." El concepto de evidencia sustancial consiste en "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Batista, Nobbe v. Jta. Directores, 185 DPR 206, 216 (2012).

Por otro lado, la Sección 4.5 de la LPAU, *supra*, dispone que las conclusiones de derecho "...serán revisables en todos sus aspectos por el tribunal". Sobre el mismo el Tribunal Supremo en el caso *Vázquez v. Consejo de Titulares*, 2025 TSPR 56 (2025) adoptó lo resuelto por el Tribunal Supremo de los Estados Unidos en *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). Conforme a lo establecido por el Tribunal Supremo en el caso precitado, los tribunales deben ejercer un juicio independiente al de un organismo administrativo, al decidir si esta ha actuado dentro del marco de sus facultades estatutarias. *Id.* Del mismo modo, contrario a la práctica de las pasadas décadas, los tribunales no vienen obligados a darle deferencia a la interpretación de derecho que haga una agencia administrativa cuando la ley es ambigua. *Id.*

**B.**

La Ley Núm. 114-2001, mejor conocida como la *Ley de la Corporación Pública para la Supervisión y Seguro de Cooperativas de Ahorro y Crédito*, 7 LPRA sec. 1334, se adoptó para velar por la integridad, solvencia y fortaleza financiera del movimiento cooperativo de Puerto Rico y creó la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico (COSSEC). La

COSSEC fue creada con el propósito de fungir como organismo fiscalizador de las Cooperativas y para velar por todos los derechos y prerrogativas de los socios de toda cooperativa, entre otras cosas. Artículo 4 de la Ley Núm. 114-2001, 7 LPRA sec. 1334b.

**C.**

La Ley Núm. 239, mejor conocida como la *Ley General de Sociedades Cooperativas de Puerto Rico*, 5 LPRA secs. 4382, *et seq.* (Ley 239), fue creada para garantizar el libre desenvolvimiento y la autonomía de las cooperativas de Puerto Rico. Artículo 2.0 de la Ley 239, 5 LPRA sec. 4382. Bajo este estatuto, toda cooperativa que este organizada de conformidad con esta Ley se regirá por sus disposiciones, por el Derecho Cooperativo y de manera supletoria con el derecho que le sea compatible con su naturaleza. Artículo 2.2 de la Ley 239; 5 LPRA sec. 4384. Del mismo modo, la Ley Núm. 239-2004, *supra*, regula el régimen de vivienda cooperativa de titulares. Como parte de su política pública, el estatuto pretende fomentar la creación de cooperativas de viviendas en la cual todos los socios posean título de dominio exclusivo sobre sus unidades de vivienda en el marco jurídico de las cooperativas. Artículo 35.0 de la Ley 239.

Sobre las asambleas, el Artículo 10.0 de la Ley 239, 5 LPRA sec. 4450, establece que la Asamblea General, Ordinaria o Extraordinaria es la autoridad máxima de toda cooperativa. Sus decisiones son obligatorias tanto para la Junta de Directores, los comités y todos los socios de la cooperativa, ya sea presentes o ausentes, siempre que se hubiera adoptado de conformidad con la normativa aplicable. El aviso de celebración de una asamblea deberá ser enviado por escrito a cada socio a su última dirección conocida, con por lo menos, diez (10) días de antelación a la fecha fijada para la celebración de la asamblea, a menos que la

legislación disponga lo contrario. Artículo 10.2 de la Ley 239, 5 LPRA sec. 4452.

La Junta de Directores es quien podrá convocar las asambleas extraordinarias, generales o de distrito, cuando lo estime conveniente. Artículo 13.0 de la Ley 239, 5 LPRA sec. 4457. No obstante, la Junta de Directores se verá en la obligación de convocar asambleas extraordinarias cuando así lo soliciten "diez por ciento (10%) del número total de socios de la cooperativa, cuando se trata de una Asamblea General de socios". *Id.* en su inciso (a).

Por otro lado, el Artículo 15.10 de la Ley 239, 5 LPRA sec. 4475, regula el procedimiento de destitución de directores. Sobre el mismo expone que dos terceras (2/3) partes de los miembros de la Junta de Directores podrán mediante una petición escrita destituir a un director de su posición en la Junta. Esta petición debe ser radicada ante el secretario o el presidente de la Junta de Directores. *Id.* Por su parte, en el Artículo 15.11 se establece que:

> [T]odo socio podrá iniciar un procedimiento de separación contra un director radicando, ante el secretario o presidente de la cooperativa y con copia al comité de supervisión, una solicitud escrita que exponga los cargos imputados y, esté firmada por el cinco por ciento (5%) de todos los socios.
>
> [...]
>
> Tal solicitud será sometida ante la consideración de la próxima Asamblea de socios, que podrá ser extraordinariamente convocada para tal efecto. Dicha Asamblea podrá separar al Director de la Junta, con el voto concurrente de la mayoría de los socios presentes.
>
> 5 LPRA sec. 4476.

Conforme el Artículo 15.12, el director o directora al cual se le formulen cargos para su separación de la Junta de Directores, será notificado de los mismos por escrito con no menos de diez días de antelación a una Asamblea. 5 LPRA sec. 4477. Este director o directora tendrá la oportunidad de ser oído en persona o

por medio de su abogado, y de ofrecer evidencia en la Asamblea. *Id.* En el caso de que una persona o personas hubiesen sido quienes formularon los cargos contra un director o directora de la Junta de Directores, estos gozarán de igual derecho a ser oído en persona o por medio de su abogado, y de ofrecer evidencia en la Asamblea. *Id.*

**III**

En el caso ante nuestra consideración, la parte recurrente nos plantea que la COSSEC incidió al ordenar la inclusión en la agenda de la asamblea extraordinaria el tema sobre la destitución de la Junta de Directores, **pues esta comprende que es una petición contraria a derecho porque no se notificó a todos los directores de los cargos por el cinco por ciento (5%) de los socios**. No le asiste razón. Veamos.

Es norma reiterada que, mediante la revisión judicial, el Tribunal de Apelaciones debe determinar lo siguiente: si el remedio brindado por la agencia administrativa es el apropiado; si las determinaciones de hechos realizadas se basan en evidencia sustancial que obra en el expediente administrativo; y, si las conclusiones de derecho son correctas mediante una revisión completa y absoluta. Siempre tomando en consideración, que el criterio rector para los tribunales para revisar una decisión administrativa será la razonabilidad en la actuación de la agencia.

Por otro lado, todo socio podrá iniciar un procedimiento de separación contra un director de la Junta de Directores al presentar, ante el secretario o presidente de la cooperativa y con copia al comité de supervisión, una solicitud escrita que exponga los cargos imputados y que esté firmada por el cinco por ciento (5%) de todos los socios.

Luego de un estudio del legajo administrativo y el derecho antes expuesto, resolvemos que COSSEC no erró al ordenar la

inclusión en la agenda de la asamblea extraordinaria el tema sobre la destitución de la Junta de Directores. Según surge del escrito titulado *Solicitud de Asamblea Extraordinaria de Emergencia para Discutir Situación en Administración, Junta de Directores y Señalamientos de COSSEC* del 31 de enero de 2025, los socios de la Cooperativa de Vivienda Jardines de Valencia expusieron quince (15) cargos contra la Junta de Directores de la precitada cooperativa. En síntesis, alegaron que, debido al mal manejo de las finanzas, administración y los daños ocasionados por la Junta de Directores se solicitaba una asamblea extraordinaria para su destitución. Por tal razón, al finalizar el documento solicitaron la celebración de una asamblea extraordinaria para atender los siguientes temas:

    A. Explicación de Asuntos pendientes siguientes:

        1. Informe de COSSEC, y plan de trabajo
        2. Informe Status de Propuesta Federal
        3. Plan de Financiamiento para mejorar
        Finanzas

    B. Destitución de la Junta de Directores[.]

Esta petición recibió el respaldo de treinta y ocho (38) socios de ciento noventa y nueve (199) que se encuentran activos en la corporativa, siendo esto más del cinco por ciento (5%) de los titulares necesario mediante estatuto. A raíz del cuadro fáctico antes expuesto, queda meridianamente claro que los socios de la Cooperativa de Vivienda Jardines de Valencia cumplieron con las disposiciones para la destitución de directores establecida en la Ley 239. Una lectura de la *Solicitud de Asamblea Extraordinaria de Emergencia para Discutir Situación en Administración, Junta de Directores y Señalamientos de COSSEC* del 31 de enero de 2025, deja claro cuáles son los quince cargos (15) formulados por los socios de la cooperativa contra todos los miembros de la Junta de Directores. Debido a que hubo estricto cumplimiento con las

disposiciones de la Ley 239, la Junta de Directores de la precitada cooperativa está obligada a incluir el tema sobre su destitución en la convocatoria para asamblea extraordinaria.

**IV**

Por los fundamentos que nos anteceden, confirmamos el dictamen emitido por la COSSEC.

**Notifíquese.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.   La Jueza Aldebol Mora concurre sin opinión escrita.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones